**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

***Attorneys for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEAN FETTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL PROTEIN SUPPLEMENTS CORPORATION dba UNIVERSAL NUTRITION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dean Fetters ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, hereby sues Defendant Universal Protein Supplements Corporation dba Universal Nutrition ("Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

## I. INTRODUCTION

1. Defendant makes, distributes, sells, and markets Animal 5g Creatine Chews, available for purchase in Grape, Fruit Punch, Lemon Ice, Candy Crush'd, and Smarties flavors (collectively, the "Product").

2. Defendant deceptively labels the Product on Amazon.com by misrepresenting the dosage amount of each chew tablet. Specifically, the Product's front label prominently advertises a certain dosage amount, for example, "5g creatine." The front label also advertises the number of chew tablets in the Product, for example "120 chewable tablets." Reasonable consumers are therefore led to believe that each chew tablet contains the advertised dosage amount: 5 grams of creatine in each chew tablet.

3. The truth, however, is that each chew tablet does not contain the advertised dosage amount. Instead, consumers must ingest four chew tablets to achieve the advertised dosage. As a result, consumers grossly overpay for the Product, receiving only a quarter of the advertised value while paying the full purchase price.

4. Plaintiff read and relied upon Defendant's advertising when purchasing the Product and was damaged as a result.

5. Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the United States, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, §§ 17500 *et seq*. ("FAL"). Plaintiff brings further causes of action for breach of express and implied warranties, negligent misrepresentation,

intentional misrepresentation/fraud, and quasi-contract/unjust enrichment.

6. Plaintiff seeks an order compelling Defendant to (a) cease marketing the Product using the misleading and unlawful tactics complained of herein, (b) destroy all misleading deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages and punitive damages, as allowed by law.

## II. JURISDICTION AND VENUE

7. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

8. The court has personal jurisdiction over Defendant. Defendant purposely availed itself to California because Defendant does business within this judicial district, sells the Product in this judicial district, and is committing the acts complained of below within this judicial district.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the injury in this case substantially occurred in this District. Defendant has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Product in this District, and is subject to personal jurisdiction in this District.

## III. PARTIES

10. Defendant Universal Protein Supplements Corporation dba Universal Nutrition is a New Jersey corporation with a principal place of business located in New Brunswick, NJ. Defendant makes, labels, distributes, sells, and markets the Product throughout the United States and in California. Defendant is responsible for the making, labelling, distribution, selling, and marketing of the Product throughout the applicable statute of limitations period.

11. Plaintiff Dean Fetters ("Plaintiff") is a resident of California and purchased the Product in the Grape flavor from Amazon.com while located in Los Angeles, California during the class period. Plaintiff saw the misrepresentations made on the Product label prior to and at the time of purchase and understood them as representations and warranties that each unit of the product contained the advertised dosage amount. Plaintiff relied on the representations made on the Product's label in deciding to purchase the Product. These representations and warranties were part of his basis of the bargain, in that he would not have purchased the Product, or would only have been willing to purchase the Product at a lower price, had he known the representations were false. Plaintiff would consider purchasing the Product again if the advertising statements made on the Product label were, in fact, truthful and represented in a manner as not to deceive consumers.

## IV. <u>NATURE OF THE ACTION</u>

12. Defendant sells the Product with misleading dosage representations on the Product packaging and labels, as four (4) chew tablets are required to achieve the advertised dosage of 5g creatine.

13. True and correct copies of the Grape Product's front label and supplement facts from www.amazon.com are shown below:






**Supplement Facts**

Serving Size 4 Chewable Tablets Servings Per Container 30

| Amount Per Serving | | %DV |
|---|---|---|
| Calories | 10 | |
| Total Carbohydrate | 3g | <1%* |
| Total Sugars | 2g | ** |
| Includes 2g Added Sugars | | 4%* |
| Sodium | 10mg | <1 % |
| Creatine Monohydrate | 5g | ** |
| AstraGin™ (*Panax notoginseng* Extract (root), *Astragalus membranaceous* Extract (root)) | 25mg | ** |
| Sea Salt | 25mg | ** |

* Percent Daily Values are based on a 2,000 calorie diet.
** Daily Value (DV) not established.

**OTHER INGREDIENTS:** Sugar, dextrose, natural flavor, stearic acid, citric acid, magnesium stearate, malic acid, maltodextrin, beet root powder (color), sucralose, acesulfame potassium. Made in a cGMP and HACCP certified facility on equipment that processes milk, soy, egg, peanuts, tree nuts, fish, shellfish, wheat, and sesame.

14. A screenshot of the Product in the Grape flavor as it appeared on Amazon.com during the class period is shown below:




15. Defendant's dosing representations are prominently and conspicuously displayed to grab the consumer's attention.

16. Contrary to the prominently advertised dosage amount on each of the Product's labels, each chew tablet contains only a fraction of the advertised dosage amount. Consumers must ingest four (4) chew tablets to achieve the advertised dosage of 5g creatine. This leads consumers to overpay for the Product by a significant margin.

17. Defendant's advertising misleads reasonable consumers into believing that each chew tablet contains the advertised dosage. However, contrary to the labeling, each unit only contains a fraction of the advertised dosage. Consequently, reasonable consumers believe that they are receiving four times the amount of creatine than what they are actually receiving. As a result, Defendant has charged consumers a premium for the Product, while cutting costs and reaping the financial benefits of selling a creatine supplement with less than the advertised dosage in each Product.

18. The label misrepresentations are material to reasonable consumers, including Plaintiff. The dosage representations (number of milligrams) and unit representations (number of chew tablets) convey the type and amount of dietary supplement provided by the Product, and the primary purpose of the Product is to provide the amount of creatine advertised by the Product label. Accordingly, reasonable consumers are likely to be deceived by the Product's labels.

**DEMAND FOR SUPPLEMENTS AND THE COMPETITIVE MARKET**

19. Over the past 20 years, there has been a significant increase in the prevalence of supplement use. The supplement market has been growing in terms of sales and products available on the market. Consumers are being presented a large number of products, brands, and formulations, distributed through a wide variety of marketing channels. The value of the global supplement market was estimated to be worth nearly USD 152 billion in 2021, and is expected to be worth USD 300 billion by 2028.[1]

20. In response to consumers' desire for supplements, many companies, like Defendant, have scrambled to manufacture, market, and sell purportedly high dosages, at the same or lower costs, in an effort to gain market share and outsell competitors. Unfortunately, rather than creating the actual high dosage supplements that consumers desire, Defendant makes the Product with lower dosages than is advertised on the Product's packaging and front labels, and then markets it to consumers through deceptive labeling and packaging claims. In doing so, Defendant misleads consumers into believing that the Product contains a higher dosage in each chew tablet than what is actually contained therein.

21. Defendant's competitors correctly label and sell their products to show the correct dosage information on the product's front labels. They do so by specifying on the front label the amount of creatine per chew tablet. For example,

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10421343/

the Momentous Creatine Chews with 1g Creapure® product contains exactly what it says: creatine tablets each containing 1g of creatine monohydrate.

**<u>Momentous Creatine Chews with 1g Creapure®[2]</u>**




22. Alternatively, Defendant's competitors disclose on their product's front labels that the advertised dosage amount does not apply per chew tablet, and instead applies "per serving." For example, the Bloom Nutrition 5g Creatine Gummies product specifies that the product contains 5g of creatine "per serving."

**<u>Bloom Nutrition 5g Creatine Gummies[3]</u>**

[2] https://www.vitaminshoppe.com/p/creatine-chews-1-gm-lemon-lime-150-chewable-tablets/mom-16766

[3] https://www.vitaminshoppe.com/p/creatine-gummies-5-gm-tropical-twist-36-oz-gummies/bmn-17074






Supplement Facts

Serving Size: 3 Gummies
Servings Per Container: 12

| | Amount Per Serving | %DV |
|---|---|---|
| Calories | 30 | |
| Total Carbohydrate | 10 g | 4% † |
| Total Sugars | 0 g | †† |
| Includes 0g Added Sugars | | 0% † |
| Sugar Alcohol | 9 g | †† |
| Sodium | 10 mg | <1% |
| Creatine Monohydrate | 5 g | †† |

† Percent Daily Values (DV) are based on a 2,000 calorie diet.
†† Daily Value not established.

**Other Ingredients:** Maltitol Syrup, Isomalt, Xylitol, Contains <2%: Annatto Extract (color), Carnauba Wax, Citric Acid, Fractionated Coconut Oil, Natural Flavors, Pectin, Sodium Citrate, Steviol Glycosides.

Distributed by: Bloom Nu LLC Austin, TX 78702
1866 442 6866 | bloomnu.com

23. By falsely, misleadingly, and deceptively labeling and advertising the Product, Defendant sought an unfair advantage over its lawfully acting competitors.

**PLAINTIFF'S PURCHASES, RELIANCE, AND INJURY**

24. Plaintiff Dean Fetters purchased the Product in the Grape flavor from Amazon.com during the class period while located in Los Angeles, California in reliance on the Product's front label advertising.

25. In deciding to purchase the Product, Plaintiff read and relied on the dosage information displayed on the front label, which led Plaintiff to believe that each chew tablet in the Product contained the advertised dosage – 5g of creatine per chew tablet. At the time of purchase, Plaintiff did not know that the advertised dosage was false and misleading, and that more than one chew tablet would need to be consumed to receive the advertised dosage.

26. Plaintiff would not have purchased the Product, or would not have paid as much as he did for it, had he known that each chew tablet contained only a fraction of the advertised dosage. Plaintiff paid a premium for the Product due to the

misleading labeling on the Product's packaging.

27. The representations on the Product's label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Product label misrepresents the dosage of each chew tablet.

28. Plaintiff and Class Members acted reasonably in relying on the challenged claims that Defendant intentionally, prominently, and uniformly placed on the Product's label and packaging with the intent to induce average consumers into purchasing it.

29. Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to his throughout the Class Period herein.

30. Plaintiff paid more for the Product, and would only have been willing to pay less or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

31. For these reasons, the Product was worth less than what Plaintiff paid for it.

32. Plaintiff would like to, and would consider, purchasing the Product again when he can do so with the assurance that the Product's label is truthful and consistent with the Product's actual ingredients.

33. Plaintiff will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the Product again although he would like to.

34. Plaintiff lost money as a result of Defendant's deceptive claims and practices in that he did not receive what he paid for when purchasing the Product.

35. Plaintiff detrimentally altered his position and suffered damages in an amount equal to the premium he paid for the Product.

36. The senior officers and directors of Defendant allowed the Product to

be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## NO ADEQUATE REMEDY AT LAW

37. Plaintiff seeks damages and, in the alternative, equitable restitution. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists.

38. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Product more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

39. The scope of actionable misconduct under the unfair prong of the UCL is also broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Product over a long period of time in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of product at issue). This is especially important here because Plaintiff alleges Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Plaintiff's UCL unlawful prong claim does not rest on the same conduct as his other causes of action, and there is no adequate remedy at law for this specific unlawful claim. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

40. Injunctive relief is appropriate on behalf of Plaintiff and members of

the class because Defendant continues to omit material facts about the Product. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's labeling misrepresentations are untrue and providing accurate information about the Product's true nature; and/or requiring prominent disclaimers on the Product's front label concerning the Product's true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, damages will not adequately benefit the general public in a manner equivalent to an injunction.

41. Moreover, a legal remedy is not adequate if it is not as certain as an equitable remedy. Here, Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchases of the Product are determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff and class members would be left without the parity in purchasing power to which they are entitled.

42. By the same token, Plaintiff's common law claims require additional showings, compared to the UCL, FAL, or unjust enrichment claims. For example, to prevail on a breach of warranty claim, Plaintiff must show that the challenged

statements constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required by the UCL or FAL, or for an unjust enrichment theory. In fact, the UCL and the FAL were enacted specifically to create new claims and remedies not available at common law. And unjust enrichment exists in part because contractual claims are often more difficult to establish. In this way, Plaintiff's UCL and FAL claims, and Plaintiff's unjust enrichment claims, are more certain than their legal claims.

43. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## V. CLASS ACTION ALLEGATIONS

44. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Classes (or alternative Classes or Subclasses):

> **The Nationwide Class**
> All U.S. citizens who purchased the Product from Amazon.com in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

> **The California Subclass**
> All California citizens who purchased the Product from Amazon.com in

California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

45. The Classes and Subclasses described in this complaint will jointly be referred to the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

46. Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

47. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

48. The members in the proposed Class are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the hundreds and members of the Classes are numerous. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

49. Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Product appropriate with respect to the Classes as a whole. In particular, Defendant has failed to disclose the true nature of the Product being marketed as described herein.

50. There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Classes and these common questions of fact and law include, but are not limited to, the following:

- Whether Defendant breached any express warranties made to Plaintiff and the Class;
- Whether Defendant breached any implied warranties made to Plaintiff and the Class;
- Whether Defendant violated consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;
- Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the Product;
- Whether reasonable consumers are likely to be misled by Defendant's advertising and labeling of the Product;
- Whether the Product's challenged representations are material representations made to reasonable consumers;
- Whether the proposed class is suitable for class certification;
- The proper amount of restitution, damages, and punitive damages;
- The proper injunctive relief, including a corrective advertising campaign;
- The proper amount of attorneys' fees.

51. These common questions of law and fact predominate over questions that affect only individual Class Members.

52. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Product, and suffered economic injury because the Product was and still is

misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Product, Plaintiff and Class Members would not have purchased the Product, or would have paid less for it.

53. Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel with substantial experience in handling complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

54. Plaintiff and the members of the Classes suffered, and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

55. Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

56. Defendant has acted on grounds applicable to the Class, thereby making

appropriate final public injunctive and declaratory relief concerning the Class as a whole.

57. As a result of the foregoing, class treatment is appropriate.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

***(on behalf of the California Class)***

58. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

59. California's Unfair Competition Law, Business and Professions Code §17200 (the UCL") prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, and continues to engage in such business conduct, in violation of the UCL.

60. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

**Fraudulent**

61. A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

62. As set forth herein, Defendant's claims relating to the Product are likely to mislead reasonable consumers to believe that each chew tablet in the Product contained the dosage amount advertised on the Product's front label.

63. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct. Defendant has thus engaged in unlawful, unfair

and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to public injunctive relief against Defendant, as set forth in the Prayer for Relief.

64. Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

65. Plaintiff also seeks an order for the disgorgement and restitution of the premium received from the sale of the Product the Class Members purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition, and attorneys' fees and costs.

**Unlawful**

66. The acts alleged herein are ''unlawful" under the UCL in that they violate at least the following laws:

- By knowingly and intentionally concealing from Plaintiff and the other Class members that each unit of the Product did not contain the advertised dosage;
- By misrepresenting the dosage of the Product on the front label;
- By engaging in the conduct giving rise to the claims asserted in this complaint;
- By violating California Civil Code §§ 1709-1711 by making affirmative misrepresentations about the Product;
- By violating California Civil Code §§ 1709-1711 by suppressing material information about the Product;
- By violating the California Commercial Code for breaches of express and implied warranties;
- By violating California's Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug and cosmetics labelling that is "false or

misleading in any particular";

- By violating the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- By violating the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

67. Such conduct is ongoing and continues to this date.

68. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

**Unfair**

69. Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. In the alternative, Defendant's business conduct as described herein violates relevant laws designed to protect consumers and businesses from unfair competition in the marketplace. Such conduct is ongoing and continues to date.

70. Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, and portions of the California Sherman Food, Drug, and Cosmetic Law.

71. Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

72. Defendant profited from its sale of the falsely, deceptively, and

unlawfully advertised and packaged Product to unwary consumers.

73. Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Product's packaging. Thus, public injunctive relief enjoining Defendant's deceptive practices is proper.

74. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

75. Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Product.

76. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

77. Plaintiff and the Classes were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Product if they had known the truth and (b) they overpaid for the Product because the Product is sold at a price premium due to the misrepresentations.

## <u>SECOND CAUSE OF ACTION</u>

**Violations of the False Advertising Law,**

**Cal. Bus. & Prof. Code §§ 17500 *et seq.***

***(on behalf of the California Class)***

78. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth herein.

79. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" Cal. Bus. & Prof. Code § 17500.

80. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

81. As alleged herein, Defendant falsely advertised the Product by falsely representing that each unit of the Product contained the advertised dosage, when in fact, a consumer would need to take four chew tablets to achieve the advertised dosage.

82. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased the Product in reliance on Defendant's false and misleading labeling claims that each unit of the Product contained the advertised dosage.

83. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

84. Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

85. As a result, Plaintiff, the Class, and the general public are entitled to public injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

86. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Classes, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth herein.

## <u>THIRD CAUSE OF ACTION</u>

**Violations of the Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

***(on behalf of the California Class)***

87. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

88. The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

89. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

- § 1770(a)(5): Representing that goods have characteristics, uses, or benefits which they do not have;
- § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another; and
- § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised.

90. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

91. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

92. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

93. Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

94. More than thirty days have passed, and Defendant has failed to take the corrective action specified in Plaintiff's CLRA letter. As such, Plaintiff seeks actual, punitive, and statutory damages as appropriate, as well as attorneys' fees and costs for Defendant's violations of the CLRA.

**FOURTH CAUSE OF ACTION**

**Breach of Express Warranties,**

**Cal. Com. Code § 2313(1)**

**(*on behalf of all Classes*)**

95. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

96. Through the Product's labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

97. The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned the allegation that Defendant misrepresented the dosage of each unit of the Product.

98. These representations had an influence on consumers' decisions in purchasing the Product.

99. Defendant made the above representations to induce Plaintiff and the members of Class to purchase the Product. Plaintiff and the Class members relied on the representations when purchasing Defendant's Product.

100. Defendant breached the express warranties by selling the Product with false and misleading advertised dosage amounts.

101. That breach actually and proximately caused injury in the form of the price premium that Plaintiff and Class members paid for the Product.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranties**

**Cal. Com. Code § 2314**

***(on behalf of all Classes)***

102. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

103. Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, misrepresented the dosage amount of the Product to Plaintiff and the Class.

104. Plaintiff and the Class purchased the Product manufactured, advertised, and sold by Defendant, as described herein.

105. Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

106. However, Defendant breached that implied warranty in that the Product did not contain the represented dosage in each unit of the Product, and instead, consumers must ingest multiple chew tablets to achieve the advertised dosage.

107. As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Product did not conform to promises and affirmations made on the label of the Product.

108. Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's price premium.

**<u>SIXTH CAUSE OF ACTION</u>**

**Negligent Misrepresentation**

***(on behalf of all Classes)***

109. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

110. Defendant had a duty to disclose to Plaintiff and Class Members correct

information as to the quality and characteristics of the Product because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

111. During the applicable Class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product, including the amount of creatine contained in each chew tablet.

112. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Product at a premium price.

113. Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would be overpaying for Product that contained substantially less milligrams per unit than advertised.

114. Plaintiff and Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

115. Plaintiff and Class Members would not have purchased the Product or paid as much for the Product if the true facts had been known.

## SEVENTH CAUSE OF ACTION

**Intentional Misrepresentation/Fraud**

***(on behalf of all Classes)***

116. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

117. Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Product because Defendant

was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

118. During the applicable Class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product, including the dosage amount of each chew tablet. These representations were material and were uniformly made.

119. As noted in detail above, these representations were false and misleading, as each unit of the Product contained only a fraction of the advertised dosage. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

120. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Product at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

121. Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant knew that consumers would pay more for a product if they believed they were receiving a higher dosage than that of competitors' lawfully labeled products. For that reason, Defendant misrepresented the dosage of its Product so that Defendant could realize greater profits. Defendant knew that consumers would place trust and confidence in its Product's claims and rely thereon in their purchases of the Product.

122. Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

123. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class were induced to purchase the Product at a premium.

124. Plaintiff and the Class Members would not have purchased the Product or paid as much for the Product if the true facts had been known.

125. As a result of their reliance, Plaintiff and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

126. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members. Plaintiff and Class Members are therefore entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

**Quasi-Contract/ Unjust Enrichment**

***(on behalf of all Classes)***

127. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

128. As alleged in detail above, Defendant's false and misleading labelling caused Plaintiff and the Class to purchase the Product at a premium.

129. In this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense.

130. It would be unjust and inequitable for Defendant to retain the above-mentioned benefits. For example, Defendant was only able to charge a premium for the Product by intentionally withholding information from Plaintiff, or otherwise misrepresenting the Product's qualities.

131. Plaintiff and the Class seek restitution.

## VII. PRAYER FOR RELIEF

132. Wherefore, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

- For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class

Counsel;

- For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;
- For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and
- For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 1, 2026 **CROSNER LEGAL, P.C.**

By: */s/ Lilach H. Klein*
Lilach H. Klein

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*lilach@crosnerlegal.com*

***Attorneys for Plaintiff and the Proposed Class***

**Civil Code Section 1780(d) Venue Affidavit**

I, Lilach H. Klein, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3. Defendant Universal Protein Supplements Corporation dba Universal Nutrition has done, and is doing business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Product.

4. Plaintiff purchased the Product at issue in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on September 1, 2026 in Sacramento, California.

Crosner Legal, P.C.

By: */s/ Lilach H. Klein*
LILACH H. KLEIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*lilach@crosnerlegal.com*

***Attorneys for Plaintiff and the Proposed Class***